UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RICK MADISON, et al                                                                                               PLAINTIFF

v.                                                                                  CIVIL ACTION NO. 3:03-CV-788-S

GEORGE E. FERN COMPANY                                          DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on motion of the defendant, George E. Fern Company (the "Company" or "Fern"), for summary judgment (DN 19). The plaintiffs brought this action alleging that Fern did not have just cause for terminating or refusing to accept Edwin Neal ("Neal") and Sherrie Hallett ("Hallett") as employees, and therefore, violated the collective bargaining agreement ("CBA") between it and the Stage Employees Local 17, International Alliance of Theatrical Stage Employees and Motion Picture Machine Operators of the United States and Canada (the "Union"). For the reasons set forth below we will grant defendant's motion for summary judgment by a separate order entered this date.

**BACKGROUND**

Fern is a convention and exposition contractor that sets up and takes down conventions and trade shows. In order to perform these tasks, Fern hires members of the Union on a temporary basis. When Fern has a job in which it needs members of the Union, it submits a request to the Union, which in turn refers certain members called "referents." Neal and Hallett are members of the Union and have been referents to Fern since 1986 and 1994 respectively.

On November 15, 2003, both Neal and Hallett were working as referents for Fern at the Louisville Convention Center. On that date, Fern was taking down a music exposition. When Neal

and Hallett arrived at work they were assigned by their supervisor, Ronald Harrod[1] ("Harrod"), to help move empty crates. After completing this task, Neal and Hallett were re-assigned by Harrod to dismantle a Warner Brothers "exhibitor-supervised" booth. A booth that is "exhibitor-supervised" is one in which the exhibitor directs the Union referent. The Warner Brothers booth was about thirty feet long, comprised of four-by-eight wall panels. Dismantling the booth involved separating the wall panels and loading them into crates.

While Neal and Hallett were carrying the third to last wall panel to a crate they heard someone yell "look out." When the two turned to see what had happened they saw the remaining two wall panels leaning diagonally on a pipe and drape. Shortly after the panels fell, Harrod came over to inquire what had happened. Harrod took notes and wrote the following:

> Edwin Neal/Sherrie Hallett, Judi Bagnato/James Grupenhoff - Exh. in booth. While unbolting back wall of display, a section of display booth 414-420 - Warner Bros. Publications - fell over into Booth 315-321 Johns Music and hit a person dismantling that booth and hit Susan Schultz on her arm & side as she was trying to resist the piece from falling on her. She does not want an EMT or medical attention at this time, but wants documentation as to what happened because she says she may have strained her neck while trying to catch the display with her arm. Fern employees Edwin Neal and Sherrie Hallett were working in the booth with the 2 exhibitors under the exhibitors supervision. The floor does appear to be unlevel at site were (sic) booth was standing and an electrical cord was running under the booth.

After preparing this statement, Harrod contacted Jeffery Hall ("Hall"), General Manager of Fern's Louisville office. Prior to contacting Hall, Neal and Hallett were told that they could take their break or continue to dismantle the booth. Both decided to finish taking down the booth. After Harrod reported what had occurred, Hall told him that pursuant to Fern's drug testing policy the referents involved in the incident would need to be sent for testing. Harrod did not disclose the identity of the referents involved until after Hall had determined that they needed to be tested.

---

[1] Although the defendant's briefs have spelled Ronald Harrod's name two different ways, either "Herrod" or "Harrod," for purposes of this memorandum opinion the court will use "Harrod" as the spelling.

- 3 -

By the time Harrod approached Neal and Hallett to inform them that they were going to be drug tested they had already finished dismantling the booth. Both Neal and Hallett declined to submit to the testing because they felt that Fern's request was arbitrary considering that they were put back to work and because other people involved in accidents in the past were not subjected to testing. Harrod informed them that refusing the testing would result in Fern no longer accepting them as referents. Both Neal and Hallett contacted Rick Madison ("Madison"), the Union's business agent, to inform him of the situation. Madison also informed Neal and Hallett that if they refused to submit to the test, they would probably no longer be a part of the referral system to Fern. Both Neal and Hallett still refused to submit to testing and were subsequently sent home from work for the day. Two days later, on November 17, 2003, Fern sent letters to Madison informing him that neither Neal nor Hallett would be accepted as referents in the future.

Fern and the Union entered into a CBA on April 5, 1999. The CBA set forth the terms and conditions of the relationship between the two organizations, at the time of this incident, including Fern's right to terminate or refuse to accept the referral of Union members. The dispute in this action arises under Article VI of the CBA, entitled Discipline and Discharge. Article VI of the CBA states:

> The Company shall have the right to discipline or discharge employees for just cause. While it is the policy of the Company to warn employees for minor infractions before taking disciplinary action or discharging them, it is distinctly understood and agreed that certain offenses such as, but not limited to the following, shall be cause for immediate discharge, without warning; dishonesty; insubordination or disrespectful conduct; ... possession or use or being under the influence of alcohol or narcotics or hallucinatory drugs;....

Fern argues that based on Neal and Hallett's refusal to submit to a drug test, the decision to no longer accept them as referents does not breach the CBA. Neal, Hallett and the Union disagree with this assessment, and claim that Fern did not have "just cause" to deny them as a referents.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

## JUST CAUSE

Both parties agree that under the CBA, Fern may refuse to accept a referent for "just cause." Therefore, the issue which we must decide is whether or not Fern had "just cause" to refuse future referrals of Neal and Hallett based on their refusal to submit to a drug test. Since the CBA does not have an exclusive list of offenses which constitute "just cause," we look to see how it is customarily defined. Just cause is commonly defined as "[a] cause outside legal cause, which must be based on reasonable grounds...." *Highway & Local Motor Freight Emples. Local Union No. 667 v. Wells Lamont Corp.*, 69 Fed. Appx. 300, 305 (6th Cir. 2003) (citation omitted).

Fern "has the authority to terminate any employee, as long as it follows its own guidelines and the termination is not arbitrary and capricious." *Id*. To determine whether a decision is arbitrary and capricious,

> the court must consider if there was a rational connection between the facts found and the choice made. A decision is not arbitrary or capricious if it is possible to offer a reasoned, evidenced-based explanation for a particular outcome. A decision is supported by substantial evidence if there is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion reached.

*City of Riverview v. Surface Transp. Bd.*, 2005 FED App. 0066P (6th Cir. 2005).

The plaintiffs argue that Fern did not have a clear post-accident drug testing policy and therefore the decision to have them tested was arbitrary. However, neither the Union nor the referents have challenged Fern's drug testing policy. The complaint alleges that Fern violated the CBA because it did not have just cause to refuse the referral of Neal and Hallett. We find that Neal and Hallett's refusal to submit to the drug test provided just cause, as required by the CBA. Although no one expects an employee to comply with an unreasonable order, it is expected that an employee will follow and comply with reasonable requests. *Crider v. Spectrulite Consortium*, 130 F.3d 1238, 1242 (7th Cir. 1997). "An employee's refusal to comply with orders and reasonable work rules poses real harm to the employer." *Id*. (citation omitted). The harm may be economic or even result in loss to employee morale and discipline. *Id*.

Here, Neal and Hallett were not requested to remove a safety device on a dangerous piece of equipment or to go pick up their supervisor's laundry. They were requested to submit to a drug test after their involvement in a work-related accident. Even though the referents may have been unaware or unclear of Fern's post-accident drug testing policy, this request cannot be seen as unreasonable. Based on their refusal, other referents may "wonder why they should obey rules when [Neal and Hallett] could flout them." *Id*. Their refusal can only undermine Harrod's authority with the other employees. *Id*. Therefore, we find that a "reasonable mind" could accept the refusal by Neal and Hallett to submit to the drug test as adequate to support the Fern's decision.

## **CONCLUSION**

As a matter of law, Fern had just cause to refuse to accept Neal and Hallett as referents. Therefore, the court will grant summary judgment in favor of Fern. A separate order will be entered herein this date in accordance with this opinion.